# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **KURT F. WILKENING,**<br><br>    Plaintiff,<br><br>v.<br><br>**VEOLIA ES EVERGREEN LANDFILL, INC., a Georgia corporation; and VEOLIA ES PECAN ROW LANDFILL, LLC, a Georgia limited liability corporation,**<br><br>    Defendants. | Civil Action 7:10-CV-122 (HL) |

## ORDER

This case is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 42). For the reasons discussed below, the Motion is granted, in part, and denied, in part.

Also before the Court are Plaintiff's Motion to Exclude and/or Strike the Expert Opinions and Testimony of William F. Hodges, P.E. (Doc. 36), Defendants' Motion in Limine to Strike and Exclude the Expert Report and Opinion Testimony of Usha Rodrigues (Doc. 40), and Defendants' Motion to Strike Affidavit of Usha Rodrigues (Doc. 73). As the Court did not consider any testimony from the experts in ruling on the Motion for Summary Judgment, it is not necessary to rule on the motions relating to the experts. Accordingly, the Motion to Exclude (Doc. 36), Motion in Limine to Strike (Doc. 40), and Motion to Strike Affidavit (Doc. 73) are all denied as moot.

**I.     FACTS**

On or about March 29, 1989, Big Bin Services, Inc. ("Big Bin") acquired a parcel of real property in Lowndes County, Georgia (the "Pecan Row Property") for the purpose of constructing and operating a solid waste disposal facility (the "Pecan Row Landfill"). The Georgia Department of Natural Resources issued a permit to Big Bin Disposal-All, Inc. ("Dispos-All"), an affiliate of Big Bin, which allowed operation of the Pecan Row Landfill on the Pecan Row Property. Plaintiff was the sole shareholder in Big Bin and Dispos-All at all times prior to and during the permit application process.

After securing the landfill permit, Plaintiff sold and transferred all of his shares of stock in Big Bin and Dispos-All to Equivest Waste Solutions, Inc. In connection with the sale and transfer of stock, Big Bin entered into a Royalty Fees Agreement (the "Agreement") with Plaintiff. The Agreement contains the following provision:

> Within thirty (30) days after the last day of each calendar month after the date hereof, BIG BIN, its successors and assigns, shall pay to WILKENING a royalty fee of $1.00 for each ton of waste, if any, delivered to the Landfill (including any contiguous and/or vertical expansions thereof approved by the Environmental Protection Division of the Georgia Department of Natural Resources) during such calendar month and accepted by BIG BIN (or any of its subsidiaries), in its sole discretion, [provided that BIG BIN shall pay a minimum of $1,800,000 to WILKENING]. . . .For purposes of this paragraph, the term "contiguous" shall mean any property within a one mile radius of the Landfill.

Through a series of transfers and corporate acquisitions, Defendant Veolia ES Pecan Row Landfill, LLC ("Defendant Veolia Pecan Row"), a wholly owned

2

subsidiary of Veolia ES North America, LLC ("Veolia ES"), succeeded to and assumed Big Bin's obligations under the Agreement. From the date of the Agreement through December 2010, host fees were paid to Plaintiff by Defendant Veolia Pecan Row and its predecessors in ownership of the Pecan Row Landfill. Plaintiff contends that from 2001 to the present, he was underpaid royalty fees for certain categories of materials delivered to the Pecan Row Landfill, including construction and demolition materials, white goods[1], shredder fluff[2], mixing agent, foundry sand, ash, and recycled materials.

In November of 1998, the Environmental Protection Division ("EPD") of the Department of Natural Resources issued Solid Waste Handling Permit No. 092-022D(MSWL) to Deep South Regional Solid Waste Management Authority ("Deep South"). The landfill permit was associated with the Deep South Municipal Solid Waste Management Landfill, which was located on certain real property owned by Deep South. In May of 2002, Onyx Evergreen Landfill, Inc., a predecessor of Defendant Veolia ES Evergreen Landfill, Inc. ("Defendant Veolia ES Evergreen"), acquired approximately 317.995 acres and the landfill permit from Deep South. The landfill permit was transferred to Onyx by the EPD, and the landfill was eventually renamed the Evergreen Landfill. Defendant Veolia ES Evergreen is the present owner and operator of the Evergreen Landfill. Defendant Veolia ES Evergreen

---

[1] White goods are refrigerators, washers, dryers, and items of that nature.

[2] Shredder fluff is the material left over after an automobile is ground up and the metal removed. The fluff consists in part of the interior cloth or leather, the seat belts, and the car seats.

purchased the Evergreen Landfill in order to continue and expand its solid waste business. It is undisputed that the Evergreen Landfill is located within one mile of the Pecan Row Landfill.

Plaintiff now seeks judgment as a matter of law that he is entitled to unpaid royalties for materials delivered to the Pecan Row Landfill. He also seeks a declaratory judgment that he is entitled to royalties for waste delivered, both past and future, to the Evergreen Landfill.

## II.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2549 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). The court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

### III. DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

"The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287, 115 S.Ct. 2137 (1995)). "[T]he Act permits a party to apply to a federal court for a declaration of an underlying right or relation. . . ." Christ v. Beneficial Corp., 547 F.3d 1292, 1299 (11th Cir. 2008).

## IV. ANALYSIS

### A. Royalty Fees for the Pecan Row Landfill

Plaintiff contends that he is entitled to damages for outstanding royalty fees associated with materials delivered to the Pecan Row Landfill between 2001 and the present. This is because the Agreement states he is entitled to $1.00 for each ton of waste delivered to the Pecan Row Landfill. Defendants argue that the materials delivered to the Pecan Row Landfill were not waste, but instead were recyclable materials and beneficial use materials for which Plaintiff is not entitled to any payment.[3] Thus, the question becomes, what constitutes "waste" for purposes of the Agreement?

The cardinal rule of contract construction is to ascertain the intention of the parties. O.C.G.A. § 13-2-3. "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. . . .The existence or nonexistence of ambiguity in a contract is a question of

---

[3] The Court rejects Defendants' contention that Plaintiff has inserted a new contract claim into his summary judgment motion.

6

law for the court." Duke Galish, LLC v. Manton, 308 Ga. App. 316, 318-19(1), 707 S.E.2d 555 (2011). "To determine if there is any ambiguity, the trial court must look to the four corners of the instrument to determine the meaning of the agreement from the language employed." Sheridan v. Crown Capital Corp., 251 Ga. App. 314, 315, 554 S.E.2d 296 (2001) (citing McCollum v. O'Dell, 241 Ga. App. 6, 9(2), 525 S.E.2d 721 (1999)). "Unambiguous language must be afforded its literal meaning and plain ordinary words given their usual significance." Perkins v. M & M Office Holdings, 303 Ga. App. 770, 773, 695 S.E.2d 82 (2010). The Court finds that the Agreement is unambiguous and will enforce the contract's clear terms.

The Agreement provides that Plaintiff is to be paid $1.00 for each ton of waste delivered. "Waste" is not defined anywhere in the Agreement. There is nothing in the Agreement to indicate that waste is a particular term of art or should be defined in any particular way other than its literal meaning. While Defendants point to the Solid Waste Management Act and state that the Court should rely on the Act to define waste, the term waste is not itself defined in the Act.[4] Further, as Defendants point out, the Act was in effect prior to the execution of the Agreement, so if the parties intended for the Act and its definitions to be incorporated into the Agreement, they certainly had the opportunity to do so. But they did not and the Court will not read additional terms into the Agreement. As the term is unambiguous, the Court will not look outside the four corners of the Agreement to define the term. Waste simply

---

[4] The Solid Waste Management Act defines biomedical waste, commercial solid waste, construction or demolition waste, industrial solid waste, municipal solid waste, solid waste,

means waste. The Court will use the plain, ordinary meaning of waste. Black's Law Dictionary defines waste as "[r]efuse or superfluous material." BLACK'S LAW DICTIONARY 1728 (9th Ed. 2009). Webster's defines waste as "damaged, defective, or superfluous material produced during or left over from a manufacturing process or industrial operation," "scrap," "refuse from places of human or animal habitation," and "garbage, rubbish." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2580 (1993). It is clear to the Court that the materials at issue here - construction and demolition materials, white goods, shredder fluff, chemical mixing agents, foundry sand, ash by-product, grass, plastic, and paper - are waste when delivered to the Pecan Row Landfill. How Defendants classify those items or use those items once they are disposed of in the Pecan Row Landfill is irrelevant.[5] Accordingly, Plaintiff was entitled to royalty payments on these materials. However, the Court does not agree with Plaintiff that he is entitled a judgment in the amount of $772,584.13 as a matter of law. This is because part of Plaintiff's claim for royalty payments is barred by the statute of limitations.

Defendants raised the statute of limitations issue in its response to Plaintiff's summary judgment motion, and argued that a six-year statute of limitations applies to the royalties claim. Plaintiff argued in reply that a twenty-year statute of limitations

---

and special solid waste, but does not define the term waste.

[5] The Court points out that the Agreement states Plaintiff is entitled to royalties for every ton of waste <u>delivered</u> to the Pecan Row Landfill. Contrary to Defendants' position, there is nothing in the Agreement that requires the waste be disposed of in the Pecan Row Landfill.

8

applied because the Agreement was a sealed instrument. The Court disagrees with Plaintiff on this point.

"The law is clear that to constitute a sealed instrument, there must be both a recital in the body of the instrument of an intention to use a seal and the affixing of the seal or scroll after the signature." Perkins v. M & M Office Holdings, LLC, 303 Ga. App. 770, 772, 695 S.E.2d 82 (2010) (quoting McCalla v. Stuckey, 233 Ga. App. 397, 398, 504 S.E.2d 269 (1998)). While "SEAL" is printed after Plaintiff's signature, and the corporate seal of Big Bin Services, Inc. was affixed to the Agreement, there is no recital in the Agreement of an intention to use a seal. The Agreement does not provide that the parties have "affixed their seals," *see* Cagle Const., LLC v. Travelers Indem. Co., 305 Ga. App. 666, 669, 700 S.E.2d 658 (2010), or state "witness my hand and seal" in its body, *see* Brown v. Cooper, 237 Ga. App. 348, 351-52, 514 S.E.2d 857 (1999), or state that the Agreement was "signed, sealed and delivered" by either party, *see* Telfair Finance Co. v. Williams, 172 Ga. App. 489, 323 S.E.2d 689 (1984). The only other reference to a seal is the phrase, "Signed, sealed and delivered on the 1st day of August, 1991 in the presence of," located above the space for witnessing. It has been held that this phrase in that location "does not indicate any intention of the parties to execute a sealed instrument, but is merely a statement to be signed by a witness or witnesses." Johnson v. Int'l Agr. Corp., 41 Ga. App. 740, 154 S.E. 465 (1930). As there is no recital in the body of the Agreement of an intention to use a seal, the Agreement is not a contract under seal under Georgia law and is subject to the six-year statute of limitation for written

contracts. See O.C.G.A. § 9-3-24 ("All actions upon promissory notes, drafts, or other simple contracts in writing shall be brought within six years after the same become due and payable.")

The six-year statute of limitations does not, however, completely bar Plaintiff's claims. "[W]ith respect to a breach of contract claim, the statute of limitation runs from the time the contract is broken rather than from the time the actual damage results or is ascertained." Moore v. Dep't of Human Resources, 220 Ga. App. 471, 472, 469 S.E.2d 511 (1996). "The discovery rule is not applicable to a cause of action based on breach of contract." Owen v. Mobley Const. Co., Inc., 171 Ga. App. 462, 320 S.E.2d 255 (1984). When the six-year period begins running on a breach of contract claim depends on whether the agreement is entire or divisible. Teachers Retirement Sys. of Ga. v. Plymel, 296 Ga. App. 839, 844, 676 S.E.2d 234 (2009). An agreement is entire when the contractual consideration at issue is a single sum certain with a definite due date. See Baker v. Brannen/Goddard Co., 274 Ga. 745, 748, 559 S.E.2d 450 (2002). The Agreement, however, provides that Big Bin and its successors within 30 days after the last day of each calendar month are to pay a $1.00 royalty fee to Plaintiff for each ton of waste delivered to the Pecan Row Landfill during such calendar month and accepted by Big Bin. The contract was for an indefinite total amount payable in installments over an uncertain period, making it a divisible installment contract. See id. at 749. In such an agreement, "the breaches occur at successive periods . . . [and] an action will lie for each breach; but all the

breaches occurring up to the commencement of the action must be included therein." O.C.G.A. § 13-6-14.

A statute of limitations begins to run "on the date that suit on the claim can first be brought." Baker, 274 Ga. at 749 (quoting Hoffman v. Ins. Co. of N.A., 241 Ga. 328, 329, 245 S.E.2d 287 (1978). Thus, the limitations period in this case started when the first breach of the Agreement occurred. Id. (citing Mobley v. Murray County, 178 Ga. 388(1), 173 S.E. 680 (1934)). It is unclear from the record when the first breach occurred, but that does not matter since the Agreement is divisible. "[T]he statute will run separately as to each payment or performance when it becomes due, either as an independent obligation or as a return for an instal[l]ment of the counter-performance. [Cit.]" Id. at 750 (quoting Piedmont Life Ins. Co. v. Bell, 103 Ga. App. 225, 235(3) 119 S.E.2d 63 (1961)). This means that any royalty payments due more than six years before the lawsuit was filed are barred. Thus, Plaintiff cannot seek recovery for any alleged breach of contract prior to October 20, 2004.

On the record before it, the Court cannot determine how much Plaintiff is entitled to in damages for the non-payment of royalties for materials delivered to the Pecan Row Landfill. Plaintiff's request for summary judgment in his favor on damages must be denied. The Court will hold a damages hearing at a time and location to be determined. Notice of the hearing will be sent out in the near future. The Court notifies the parties that the damages hearing will not be the place to argue

with the findings contained in this Order. Any disagreement with this Order can be raised before the Eleventh Circuit in the inevitable appeal.

### B. The Evergreen Landfill

The next question is whether Plaintiff is entitled to collect royalty fees for all waste, both previously and in the future, delivered to the Evergreen Landfill. Based on its reading of the Agreement, the Court finds that Plaintiff is entitled to collect royalties for past waste delivered to the Evergreen Landfill, and is entitled to a declaratory judgment that he shall receive royalties for all waste delivered to the Evergreen Landfill in the future.

As previously noted, the Agreement states:

> Within thirty (30) days after the last day of each calendar month after the date hereof, BIG BIN, its successors and assigns, shall pay to WILKENING a royalty fee of $1.00 for each ton of waste, if any, delivered to the Landfill (including any contiguous and/or vertical expansions thereof approved by the Environmental Protection Division of the Georgia Department of Natural Resources) during such calendar month and accepted by BIG BIN (or any of its subsidiaries), in its sole discretion, [provided that BIG BIN shall pay a minimum of $1,800,000 to WILKENING].

The Agreement specifically defines "contiguous" as "any property within a one mile radius of the Landfill." There is no dispute that the "Landfill" is Pecan Row Landfill and that the Evergreen Landfill is located within a one mile radius of the Pecan Row Landfill. If the contract definition for "contiguous" is substituted in the royalties clause, the clause reads:

> Within thirty (30) days after the last day of each calendar month after the date hereof, BIG BIN, its successors and

> assigns, shall pay to WILKENING a royalty fee of $1.00 for each ton of waste, if any, delivered to the Landfill (including ***any property within a one mile radius of the Landfill*** and/or vertical expansions thereof approved by the Environmental Protection Division of the Georgia Department of Natural Resources) during such calendar month and accepted by BIG BIN (or any of its subsidiaries), in its sole discretion, [provided that BIG BIN shall pay a minimum of $1,800,000 to WILKENING].

Reading the royalties clause as modified by the definition agreed to by the parties, Plaintiff is entitled to $1.00 for each ton of waste delivered to any property within a one mile radius of the Pecan Row Landfill. As the Evergreen Landfill is within a one mile radius of the Pecan Row Landfill, Plaintiff is entitled to $1.00 for each ton of waste delivered to the Evergreen Landfill. Plaintiff would also be entitled to royalties for vertical expansions of the Pecan Row Landfill approved by the EPD, though that is not an issue in this case.

The Court finds that Plaintiff is entitled to summary judgment and a declaratory judgment that he receive royalty payments for past and future waste, as defined in subsection A above, delivered to the Evergreen Landfill.[6]

## V. CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. 42) is granted, in part, and denied, in part. A damages hearing will be held at a location and time to be determined.

---

[6] The Court acknowledges that its analysis of the Evergreen Landfill issue is different from the parties' analysis of the issue. However, the Court is not bound by the parties' framing of the arguments and can reach a decision on whatever grounds it sees fit.

Plaintiff's Motion to Exclude and/or Strike the Expert Opinions and Testimony of William F. Hodges, P.E. (Doc. 36), Defendants' Motion in Limine to Strike and Exclude the Expert Report and Opinion Testimony of Usha Rodrigues (Doc. 40), and Defendants' Motion to Strike Affidavit of Usha Rodrigues (Doc. 73) are all denied as moot.

SO ORDERED, this the 25th day of January, 2012.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh